## MARGARET MOLLMAN, Respondent, v. UNION ELECTRIC LIGHT AND POWER COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed January 4, 1921.

1. **TRESPASS: Meter Reader: Entering Consumer's House Unannounced: Injury to Inmate Through Fright: Liability.** Although an electric supply contract gave the duly authorized agents of the company free access to the meters and service on consumer's premises at all reasonable times, it did not mean that its agent had a right to enter the consumer's house by pushing open the door and rushing in without knocking or making any announcement of his presence or business, and the company was liable to plaintiff, under the circumstances, for physical injuries resulting from fright.

2. ———: ———: ———: ———: **Damages: Recoverable.** In an action to recover for physical injuries resulting from fright caused by a wrongful act, the general rule is, that if the injury is directly traceable to the unlawful invasion of plaintiff's rights, then such recovery may be had.

3. **INSTRUCTIONS: Abandoned Issue: No Instruction Necessary.** In an action for damages for personal injuries alleged to have been sustained by plaintiff and caused by trespass by a meter reader, where plaintiff abandoned her claim for punitive damages when the case was finally submitted to the jury, there was no error in an instruction giver for plaintiff which did not require the jury to find that the trespass was wanton.

Appeal from the Circuit Court of the City of St. Louis. — *Hon. Wilson A. Taylor*, Judge.

AFFIRMED.

*Jourdan, Rassieur & Pierce* and *Chauncey H. Clarke* for appellant.

(1) The court erred in refusing to give to the jury the instruction in the nature of a demurrer to the evi-

dence requested by defendant, for the reason that plaintiff made no showing entitling her to have the case submitted to the jury. (a) The act of the meter reader in entering the kitchen, hastily and without knocking, for the purpose of reading the meter located therein, was neither unlawful nor wanton. It was not unlawful, for the reason that plaintiff's husband, Peter Mollman, in his contract with defendant for electric service, had agreed that defendant's said meter reader should at all reasonable times have free access to the meter. C. F. Adams Co. v. Sanders, 23 Ky. L. R. 1978, 66 S. W. 815; Hitchcock v. Essex & Hudson Gas Co., 71 N. J. L. 565; Bradley v. Sobolewsky, 91 Conn. 492, 2 A. L. R. 1387; Vanderberg v. K. C. Missouri Gas Co., 126 Mo. App. 600; Wilmerding v. Rhodes-Haverty Furn. Co., 122 Ga. 312; North v. Williams, 120 Pa. St. 109; W. T. Walker Furn. Co. v. Dyson, 32 App. Cas. (D. C.), 90. It was not wanton, for the reason that the meter reader in so entering the kitchen neither committed an unlawful act nor an act which he at the time knew to be unlawful. A showing of both these elements is essential to a showing of wantonness. Trauerman v. Lippincott, 39 Mo. App. 478; Peak v. Taubman, 251 Mo. 390. (b) Even if the act of the meter reader in entering the kitchen hastily and without knocking was unlawful, such unlawful act where, as here there was no showing made of contemporaneous physical injury, did not constitute a basis for the recovery by plaintiff of damages for fright or personal injuries resulting from fright, for the reason, since there was no showing made that such unlawful act was "accompanied by circumstances of malice, insult or inhumanity," that a recovery of such damages is contrary to public policy. Spade v. Lynn & Boston R. Co., 168 Mass. 285; McCardle v. Peck Dry Goods Co., 195 S. W. 1034; Trigg v. St. L. K. C. & N. Ry. Co., 74 Mo. 147; Deming v. Chicago, R. I. & P. Ry. Co., 80 Mo. App. 152; White v. Sander, 168 Mass. 296; White v. Dresser, 135 Mass. 150; Case Note, 30 Am St Rep. 712; Strange v. Mo. Pac. Ry. Co., 61 Mo.

App. 586; Smith v. Postal Tel., etc., Co., 174 Mass. 576; Mitchell v. Rochester Ry. Co., 151 N. Y. 107; Haas v. Metz, 78 Ill. App. 46; Nelson v. Crawford, 122 Mich. 466; Phillips v. Dickerson, 85 Ill. 11, 16, 28 Am. Rep. 607; Miller v. Baltimore & Ohio S. W. R. Co., 78 Ohio St. 309; Anderson v. Taylor, 56 Cal. 131; Ewing v. Pittsburgh C. & St. L. Ry. Co., 147 Pa. St. 40. The fact that, according to her testimony, plaintiff fainted as a result of the fright, thereupon struck her left side against the sewing-machine and thereafter suffered pain in her left side, did not constitute a contemporaneous physical injury, for the reason that it was "not occasioned by any material or other force prior to the fall," and the fall was the result of a purely mental cause, namely, fright. Spade v. Lynn & B. R. Co., 168 Mass. 285; McCardle v. Peck Dry Goods Co., 195 S. W. 1034; Chittick v. Philadelphia Rapid Transit Co., 224 Pa. 13; Bachelder v. Morgan, 179 Ala. 339; Driscoll v. Gaffey, 207 Mass. 102; Hess v. American Pipe Manufacturing Co., 221 Pa. 67. (2) The court erred in giving, on behalf of plaintiff, instruction No. 1, which covered her case and directed a verdict, for the reason that it narrowed the issues, in that the petition alleged that her injuries were caused by a wanton act, whereas the instruction permitted a recovery if the jury found that the meter reader, "in disregard of plaintiff's rights in her home and without permission, opened the kitchen door with great force," without requiring a finding of and entirely ignoring the issue of wantoness. Delfosse v. United Rys. Co., 201 S. W. 860; State ex rel. Long v. Ellison, 199 S. W. 984; Hall v. Manufacturers' Coal & Coke Co., 260 Mo. 351; Wojtylak v. Coal Co., 188 Mo. 260. (3) The court erred in giving, on behalf of plaintiff, instruction No. 1, which covered her case and directed a verdict, for the reason that it narrowed the issues, since if to injure her left side in fainting by striking it against the sewing-machine would be a "contemporaneous physical injury," then that she did so injure her left side constituted an essential fact

the finding of which was a condition prerequisite to her right of recovery, and this instruction permitted a recovery if the jury found that plaintiff was caused "to become greatly frightened, to fall and lose consciousness, and thereafter to suffer from nervous prostration or hysteria," without requiring a finding of and entirely ignoring the issue of whether in fainting she injured her left side. See cases cited under Point 2.

*John C. Robertson* for respondent.

(1) One who commits a trespass on the property of another is liable for the consequences resulting from fright and affection of the nervous system. Sutherland on Damages, sec. 1029; Bouillon v. Gas. Co. 148 Mo. App. 462; Watson on Personal Injuries, sec. 495; Kimberly v. Howland, 143 N. C. 404; May v. Telegraph Co., 157 N. C. 416; Kirkpatrick v. Critchfield, 178 N. C. 348; Fleming v. Knitting Mills Co., 161 N. C. 436; Shallenburg v. Morris, 115 Mo. App. 566; Heidberger v. Railroad, 133 Mo. App. 452; Jackson v. Tel. Co., 139 N. C. 347; Sanders v. Gilbert, 156 N. C. 463; Delzell v. Hotel Co., 193 Mo. App. 379; McCardle v. D. G. Co., 191 Mo. App. 263. (2) It is not necessary for the plaintiff to prove that the defendant's servant intended to frighten or to injure plaintiff; if the entry was unlawful defendant is responsible for the resulting damages even though they were not intended. Ikenroth v. Transit Co., 102 Mo. App. 597; Brennan v. Halters, 9 L. R. A. (N. S.) 254; Kavanaugh v. McIntyre, 112 N. Y. S. 987; Wingate v. Bunton, 193 Mo. App. 479; McMillan v. Elder, 160 Mo. App. 46; McNamara v. Transit Co., 182 Mo. 676; Beck v. Railroad, 129 Mo. App. 7-22; Southern Railroad Co. v. McIntyre, 169 Ala. 42; Railroad Co. v. Ricker, 116 Ill. App. 428; Palmer v. Smith, 147 Wisc. 70; Bouillon v. Gas. Co., 148 Mo. App. 462; Wyant v. Crouse, 53 L. R. A. 626; Hickey v. Welch, 91 Mo. App. 4; McAfee v. Crofford, 54 U. S. 447; Lesch v. Great Northern Ry.,

93 Minn. 435; Brownback v. Frailey, 78 Ill. App. 262; Preiser v. Wielandt, 48 App. Div. 569; Larson v. Chase. 47 Minn. 307; Meagher. v. Driscoll, 99 Mass. 281. (3) Even though the defendant had a license to enter plaintiff's home to read the meter, it must at least apply for permission to enter, and this license is, under no circumstances a justification for defendant's agent to enter without the ordinary courtesy of knocking. Collins & Co. v. Marcy, 25 Conn. 239; Foot v. New Haven Co., 23 Conn. 214; Pratt v. Ogden. 34 N. Y. 20; Seldon v. Delaware Canal, 29 N. Y. 634; Sherman Line v. Glenn Falls, 11^ N. Y. App. Div. 269; Cook's Case, Cro. Car. 637; Oystead v. Shed, 13 Mass. 520; 3 Bl. Com. 288; Sec. 5052. R. S. 1909; May v. Telegraph Co., 157 Cal. 416.

NIPPER, C.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff, and caused by trespass by a "meter reader" who was at the time an employee of defendant, and in the discharge of his duties as such. Plaintiff recovered judgment in the sum of $500, and defendant appeals, urging two assignments of error as grounds for reversal: First, that the court erred in not directing a verdict for defendant; second, that the court erred in giving instruction No. 1 for plaintiff.

The facts are brief. In the forenoon of March 8, 1917, between ten o'clock A. M. and noon on that day, the defendant's "meter reader," a young man about seventeen years of age, went upon the premises known as 4147 Pleasant Street, St. Louis, for the purpose of reading the meter that had been placed in this house under and by virture of the terms of a written contract which had been entered into prior to this date, between plaintiff's husband and the defendant. It is provided by the terms of this contract "that the duly authorized agents of the company shall have free access to the meters and service at all reasonable times, and for any and all purposes incident to this agreement and may

also have access at all reasonable times to the premises for the purpose of examining the consumer's connected load. The employees of the company may, upon failure of the consumer to comply with any of the rules of the company, remove its meters and service and discontinue the supply." The husband was not at home at the time. There was also a daughter living at this home, but she was employed and was not present. At the time of the alleged trespass, plaintiff was in the kitchen of her home, standing near the sewing machine preparing to do some sewing. The meter was located in this kitchen. With plaintiff in the kitchen were two small children, one eight and the other four years of age. Plaintiff stated that at this time the "meter reader" opened the kitchen door, which was fastened, or as she described it, "burst right into the door" without knocking or announcing his presence in any manner. At the time he did this she states that she exclaimed: "My God! Why didn't you knock?;" that the "meter reader" stepped over to the meter and announced: "Union Electric." Plaintiff was about three feet away from the door at this time. She didn't know the man, and had no knowledge of his presence about the premises until he pushed the door open, rushed in, and made the announcement as heretofore stated. Plaintiff became greatly frightened, fainted, and fell over on the sewing machine, where she was later discovered by some neighbors who were brought in at the solicitation of one of the little children. It was something like one hour before plaintiff regained consciousness. She was then confined to her bed for about seven weeks, under the treatment and care of a physician, and at the time of the trial, several months later, was still in a nervous condition.

The "meter reader" testified at the trial of this case that there was some one in the back yard hanging out clothes when he arrived on these premises, and stated that he was advised by such person in the rear to go or into the kitchen and read the meter. Plaintiff testified,

in rebuttal, that no one was at home that day except those heretofore mentioned, nor was any one in the back yard hanging out any clothes at any time during that day.

Defendant earnestly insists that by virtue of the terms of the contract above referred to, defendant would not be liable because it would have a right to enter these premises at all reasonable times for the purpose of reading the meter, and that the time of the day at which its agent entered the premises was a reasonable time. We are cited to numerous authorities to sustain this contention. It is unnecessary to enumerate in detail all the authorities cited by defendant in this connection, but the two cases upon which it seems to rely mainly are Hitchcock v. Essex & Hudson Gas Co., 71 N. J. L. 565, and Bradley v. Sobolewsky, 91 Conn. 492.

In Hudson v. Essex & Hudson Gas. Co., supra, the agent of the gas company had applied for permission to enter plaintiff's home for the purpose of removing a meter. Certain bills were unpaid, and defendant claimed the right to enter the premises by virtue of the terms of a contract similar to this one. The agent was refused admission in the morning, and in the afternoon he came to the house again and forced an entrance into the cellar door for the purpose of removing the meter. The court, in that case, makes use of the following language:

"It must be noticed that at a reasonable time the defendant's agent applied to the person in charge of the plaintiff's house for permission to do the very thing authorized by the plaintiff—to have free access to the meter and remove the same; that, such permission being refused, he subsequently at a reasonable time exercised the authority thus given, without using any more force than was necessary, and without causing in the slightest degree any personal disturbance."

In this case, defendant's agent neither knocked, requested permission to enter, nor announced his intention of entering, nor can it be said that he caused no dis-

turbance by entering. We do not think there is anything said in the case above cited to warrant the conclusion that defendant's agent was justified in entering this house in the manner in which he did. It is neither controlling nor persuasive authority for the conduct of defendant's agent in the case at bar.

In Bradley v. Sobolewsky, supra, plaintiff had sued for damages resulting from being bitten by a dog, while on the premises of defendant. He had been directed to go to certain premises by his employer for the purpose of making some examination in connection with fixtures placed there by his employer. By mistake he had gone upon the wrong premises. This case is not at all similar to the present case, and adds nothing to a proper determination of the question now at issue.

We do not wish to be understood as holding that defendant did not have a right to send its agents to these premises, and that it did not have a right to free access at reasonable times for the purpose of reading the meter, but the mere fact that it may have free access under the terms of this contract, certainly did not mean that its agent had a right to enter in the manner in which he did without knocking or making any announcement of his presence or business. He could have knocked at the door and announced who he was, and for what purpose he was upon the premises, and not have pushed open the kitchen door and rushed in, and then after the damage had been done, announced his presence and business. This contract did not authorize the invasion of the sanctity of this home in the manner and under the circumstances in which access was gained in the present case. If defendant's agent had knocked at the door, announced who he was, and his business, and had been refused admission, it would then have been ample time to have taken other steps necessary to gain admission. We will not lend our approval to this conduct or justify it under the sanction of law. There was no error in the court's failure to direct a verdict for defendant, for

even though defendant be entitled to free access at reasonable times, the entry must be made in a lawful and reasonable manner.

It is also contended that the injury suffered resulted from fright, and that recovery cannot be had for physical injuries resulting from fright, in the absence of contemporaneous injury, unless the fright is the proximate result of a wrongful act. It was shown in this case that plaintiff suffered from hysteria, or ample evidence from which the jury might have inferred that such was her condition.

There are many conflicting decisions on the right to recover for physical injuries resulting from fright caused by a wrongful act, but the general rule is, in cases of this character, that if the injury is directly traceable to the unlawful invasion of plaintiff's rights, then such recovery may be had. [Bouillon v. Gas Co., 148 Mo. App. 462, 129 S. W. 401; Lesch v. Great Northern Railway Co., 97 Minn. 503; Watson v. Dilts, 116 Ia. 249; Newell v. Whitcher, 53 Vt. 589; Armstrong v. Montgomery Street Railway Co., 123 Ala. 233.]

In speaking upon this proposition, and under a somewhat similar state of facts, the Supreme Court of Minnesota, in Lesch v. Great Northern Railway Co., supra, say:

"The defendant's last contention is that the plaintiff's fright and resulting illness were not the proximate result of the acts of defendant's employees complained of. We are of the opinion that the evidence is sufficient to sustain the finding of the jury in favor of the plaintiff on this question. It is a matter of common knowledge that fright may, and often does, affect the nervous system to such an extent as to cause physical pain and serious bodily injury. The acts complained of in this case were, if committed, an outrageous invasion of the sanctity of the home and the constitutional rights of the citizen, well calculated to frighten the wife and mother left alone in charge of her home. Whether she was

frightened by such acts, and whether her illness, which immediately followed, was the proximate result of such acts, were questions of fact for the jury."

It is next contended that the instruction given for plaintiff was erroneous because it narrowed the issues and did not require the jury to find that the trespass was "wanton" when such was alleged in the petition. Plaintiff, however, abandoned her claim for punitive damages when the case was finally submitted to the jury, and therefore there was no error in the giving of this instruction. The question of defendant's liability under the evidence in this case, was for the jury, and this jury, upon the record before us, evidently dealt fairly with defendant.

The Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.

## ON MOTION FOR REHEARING.

NIPPER, C.—Appellant, in a motion for rehearing filed in this case, insists that the opinion herein rendered by this court, is in conflict with opinions of the Supreme Court of this State, and especially the case of McCardle v. Peck Dry Goods Co. (Mo.) 271 Mo. 111, 195 S. W. 1034. It is insisted that plaintiff cannot recover because it is contrary to public policy to permit a recovery for damages resulting solely from fright. Appellant quotes from the opinion of McCardle v. Peck Dry Goods Co., supra, wherein it is claimed our Supreme Court approved and adopted the rule as laid down in Spade v. Railroad, 168 Mass. 285. But our Supreme Court did not adopt the rule as laid down in that case, as a majority of the members of that division of our Supreme Court

refused to concur in that portion of the opinion which undertakes to adopt and follow the rule announced in Spade v. Railroad, supra.

The other cases cited by appellant are negligence cases, and the rule therein announced is not applicable to such a state of facts as we have in this case.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. Appellant's motion for rehearing is accordingly overruled. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.