# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1916.

SAMUEL SPERRY v. JAMES HURD et al., Plaintiffs in Error.

Division Two, April 10, 1916.

1. **PETITION: Motion to Make Definite and Certain: Waiver.** Defendant by answering over and going to trial on the merits waives any error to the action of the court in overruling his motion to require plaintiff to make his petition more definite and certain, and cannot urge any error in that ruling on appeal.

2. **ARGUMENT TO JURY: No Exception.** A failure of defendant to save an exception to the court's ruling on his objection that plaintiff's remarks to the jury are prejudicial precludes any consideration of the remarks on appeal.

3. **TRESPASS: Destruction of Fence: Loss of Pasture: Speculative Damages.** Plaintiff is entitled to the loss of grass in his pasture caused by the repeated destruction of his fence, whereby his cattle passed out of the pasture, and because of which fact and to prevent the cattle from continually escaping and destroying other parts of his premises he was compelled to confine them in another inclosure. Such damage is not remote and speculative.

267 Mo.]　　　　　(628)

4. ———: **Participation in Wrong: Acts of Encouragement, Etc.** In order that the owner of a farm may be legally responsible for the acts of his sons in destroying the fence which inclosed plaintiff's land, it was not necessary that such owner should have been personally present participating in the destructive acts of the sons, but if he aided, counselled and encouraged them to do the act, by words or deeds, he is liable; and such participation may be established by circumstantial evidence. And the evidence in this case was sufficient to justify the jury in inferring that the owner of the adjoining farm did advise or encourage his sons in the destruction of the fence.

5. ———: **Excessive Verdict: Destruction of Fences: $7500 Exemplary Damages.** Exemplary damages cannot be accurately measured; but the character and standing of the parties, the malice with which the act was done, and the financial condition of the defendant are elements which should be taken into consideration, and the amount may be such as will serve, by way of example and punishment, to deter the commission of other like acts. It is *held* in this case that a verdict of $510 for actual damages for the destruction of defendant's fences, whereby he lost the grass of an eighty-acre pasture and his cattle escaped into and destroyed his five-acre orchard, was not excessive, but that a judgment of $7500 for exemplary damages is excessive by $6500.

Error to Buchanan Circuit Court.—*Hon. W. K. Amick*, Judge.

AFFIRMED (*conditionally*).

*Hewitt & Hewitt* and *W. H. Haynes* for plaintiffs in error.

(1) The admission of the testimony as to the value of the Davies County eighty-acre pasture was error. It was not within the issues; such damage was speculative and remote. 13 Cyc. 23; Wynant v. Krouse, 53 L. R. A. 626; Caldwell v. Evans, 85 Ill. 170; Krenger v. Blank, 62 Mich. 70; Loker v. Damon, 17 Pick. 284; Saunders v. Brosius, 52 Mo. 50. (2) There was not any evidence to connect James Hurd with the tearing down of the post and wire fence, charged in the second count of plaintiff's petition;

and the court erred in not sustaining the demurrer to the evidence as to him. Sperry v. Hurd, 151 Mo. App. 579; Sperry v. Hurd, 130 Mo. App. 495. (3) The complainant's prayer for exemplary damages, in the sum of ten thousand dollars, in view of the facts, is suggestive of a joke; but when it received the approval of the trial court, in instructions 8 and 9, viz., "and not exceeding ten thousand dollars exemplary damages," it presents itself stoutly clothed with the solemn garb of the law, which hides all its nakedness from the eye of the layman, however diaphanous such a garb may appear to the sense of justice, carrying with it the inference that the court would approve same for $10,000. It was the poison injected into the minds of the jury that produced the verdict which will shock the conscience of every reasonable person. The *remittitur* in nowise withdrew the poison from the minds of the jury, nor cured the errors committed which caused this most partial and unfair trial, and excessive verdict. Mathew v. Railroad, 26 Mo. App. 88; Doty v. Steinberg, 25 Mo. App. 334; Koeltz v. Bleckman, 46 Mo. 320; Chitty v. Railroad, 148 Mo. 77.

*K. B. Randolph* and *Hubbell Bros.* for defendant in error.

(1) The plaintiff was deprived of the use of eighty acres of pasture land immediately east of his home forty by reason of the Hurds destroying his fences and knocking boards off of his fences—the destruction of the plaintiff's fences by the defendants being the direct and only cause of the plaintiff losing this pasture. County v. Stout, 91 Pac. 724; County v. Dickens, 40 So. 753; 13 Cyc. 71; Railroad v. McMurrough, 91 S. W. 320; Linn v. Hagan, 92 S. W. 11; Macey v. Carter, 76 Mo. App. 495. (2) The evidence abundantly shows that James Hurd is liable and guilty. (3) The general rule in regard to tres-

passes is that all who direct the commission of a trespass, or wrongfully contribute to its commission, or assent to it after it is committed, are equally liable to the injured person. Holliday v. Jackson, 21 Mo. App. 667; Dyer v. Tyrrell, 127 S. W. 116; McMannus v. Lee, 40 Mo. 206; Cooper v. Johnson, 81 Mo. 485; Reed v. Peck, 163 Mo. 333. (4) The original verdict as rendered by the jury was not any more than is necessary to properly punish the defendants for trying to perpetuate the methods of the Night Rider and the Ku Klux Klan. The fact that the last verdict is larger than the three previous verdicts is not evidence that the last verdict is excessive—the three previous verdicts were too low. Shohoney v. Railroad, 231 Mo. 141.

WILLIAMS, C.—This is a suit to recover actual and exemplary damages for malicious trespass. The fourth amended petition, upon which the present trial was had, was in two counts. The first count sought to recover $100 actual damages and $10,000 exemplary damages, and was based upon the alleged malicious acts of defendants in destroying a hedge fence belonging to the plaintiff, whereby cattle and horses escaped into one of the plaintiff's enclosures, damaging his orchard, garden and truck patch, in the month of April, 1904. The second count seeks to recover $410 actual damages and $10,000 exemplary damages on account of the alleged malicious acts of defendant in the months of May, June, July, August and September, 1904, in maliciously destroying a portion of plaintiff's fence constructed of wire, boards and posts, whereby certain live stock were permitted to pass into plaintiff's truck patch, orchard, rye field and garden and damaged the same, and further in depriving plaintiff of the use of eighty acres of blue grass pasturage during the months of June, July and August of that year.

Trial was had before a jury, in the circuit court of Buchanan County, which resulted in a verdict in favor of the plaintiff on the first count for $100 actual damages and $7500 exemplary damages, and on the second count for $410 actual damages and $7500 exemplary damages. Upon the argument of the motion for a new trial, plaintiff, at the suggestion of the trial court, entered a *remittitur* of one-half of the exemplary damages on each count, and the trial court thereupon overruled the motion for new trial and entered judgment for the plaintiff in the total sum of $8010. Defendants bring the case to this court by writ of error.

This case orginated in the circuit court of De Kalb County, and was first tried upon the first amended petition, containing eleven counts; the first count was in ejectment; the second count for damages, for destruction of a hedge fence in April, 1904; the third count, for damages for destruction of a wire fence in May, 1904; the fourth, fifth, sixth, seventh, eighth, ninth and tenth counts were, respectively for the recovery of damages received in June, July, August, September, October, November and December, 1904, as a result of the destruction of the wire fence; the eleventh count asked to have the title determined to a small strip of ground upon which the fence was located. Before the case was submitted to the jury upon the first trial, plaintiff's evidence tends to show that he took a voluntary nonsuit as to counts from four to ten, both inclusive. On that trial the plaintiff recovered judgment on the ejectment count, $20 damages on the second count, and $40 damages on the third count. The trial court granted a new trial with reference to the counts asking for damages.

Plaintiff thereupon filed his second amended petition in six counts, each count being based on the damages accruing in the separate months, beginning with April and ending in August, 1904. The second

trial resulted in a judgment in favor of the plaintiff in the total sum of $456, based upon a finding in favor of plaintiff on each count. The trial court thereafter granted a new trial, and plaintiff appealed the case to the Kansas City Court of Appeals, where the action of the trial court was affirmed in the case of Sperry v. Hurd, 130 Mo. App. 495.

Thereupon, plaintiff took a change of venue to the circuit court of Buchanan County, where a trial was had upon a third amended petition, containing two counts, resulting in a judgment in favor of the plaintiff in the total sum of $1040. The case was then taken by defendants, by writ of error, to the Kansas City Court of Appeals, where the cause was reversed and remanded, as reported in Sperry v. Hurd, 151 Mo. App. 579.

When the cause was remanded to the circuit court of Buchanan County, plaintiff filed a fourth amended petition, which was the petition upon which the present trial was had. The fourth amended petition differed from the third amended petition only in the amount of exemplary damages asked; the amount of exemplary damages asked being increased from $1,000 to $10,000 on each count.

The evidence upon the part of the plaintiff tends to establish the following facts:

The plaintiff and the defendant James Hurd owned adjoining farms. Plaintiff's farm, upon which he lived, consisted of a forty-acre tract known as the "home forty" located in the extreme northeast corner of DeKalb County. He also owned eighty acres of land adjoining him on the east in Davies County. He bought the home forty in 1873 and had a survey made, which is referred to as the Williams Survey. After having the land surveyed, he built a fence along the south side of his home forty, locating the fence two feet over on his land. The west third of this fence was hedge and the east two-thirds was made of

rails. Before this difficulty occurred, the rail fence had been partly supplanted by a wire fence, beginning at the east line of the forty and extending westward to a point about half way of the south boundary, where it joined the end of a fence which ran northward to plaintiff's barn, near the center of the forty. The fence running north to the barn was known as the "barn fence." A large fence post, referred to in the testimony as the "corner post," was located at the junction of the barn fence and the south boundary fence. The space of a few rods, between the east end of the hedge and the "corner post" was not fenced except by the remnants of the decayed rail fence. The barn fence separated plaintiff's pasture land (consisting of about ten acres in this home forty and eighty acres in Davies County), from a small field or truck patch containing about five acres, portions of which were planted in orchard, rye and meadow. A garden containing about one acre joined this orchard or truck patch on the northwest. There was no fence between the garden and the orchard. In April, 1904, there were fifty young cherry trees, forty young apple trees, eighty plum trees, five pear trees and about one hundred and fifty young peach trees growing in the five-acre tract referred to in the testimony as the truck patch. About one and one-half acres of the truck patch was in rye.

Defendant James Hurd bought the forty acres immediately south of plaintiff's home forty in 1878 and, for reasons not disclosed by the evidence, built a fence along the north portion of his forty acres, parallel to the south fence of plaintiff and about six feet distant therefrom, forming between the two fences what was known as a "Devil's Lane."

Sometime in 1903 defendant procured the services of a surveyor and had the surveyor run a line between the adjoining forties. In April, 1904, the defendant James Hurd, and his two sons, codefendants

herein, set stakes through on the line made by the surveyor. These stakes were located about a foot and one-half north of plaintiff's south boundary fence.

A short time thereafter defendant James Hurd and his two sons began cutting down the hedge fence belonging to the plaintiff. The defendants brought some guns with them and leaned them against trees near the hedge fence. They cut down about one-half of the hedge fence and made about one hundred fence posts out of the hedge. Defendant also took up his wire fence south of the hedge. The hedge was thirty-six years old and had never been trimmed except on the side facing plaintiff's home for the purpose of fastening wires to the hedge. After the hedge was destroyed in this manner, five cows and five horses, belonging to the defendants, came over on to the premises of the plaintiff and injured his garden, orchard and rye. Plaintiff testified that they would come over on his place at night and that he saw their tracks, twenty-five or thirty different times. The hedge was worth about fifty dollars. The value of the rye destroyed was $15 and the value of the garden destroyed in April and May was $50.

After cutting the hedge, defendants pulled up their wire fence and rebuilt it along the line of the stakes which they had previously set, except that it appears that the wire was run from the east end of the hedge in a straight line to the "corner post" which was about two feet south of the line of stakes. Defendants pulled up the posts holding plaintiff's wire fence for a distance of about sixty yards east from the "corner post," and threw the posts and wire over on plaintiff's premises. Later the defendants pulled up the "corner post" and threw it over on plaintiff's premises. This left a gap of about fourteen feet in the barn fence, and that night about forty head of plaintiff's cattle which were in the Davies County pasture passed into his truck patch and or-

chard. The next day plaintiff drove the cattle out and with the help of his hired hand went to the woods and cut a large cherry post and placed it in the ground three and one-half feet north of where the original "corner post" stood. He then fastened his barn fence wires and the wires from his east fence to this new corner post. He also located a brace post between the new corner post and defendants' fence and nailed boards across to close the gap of three and one-half feet. The southern end of these boards came within about three inches of defendants' new fence. Sometime during that night, defendants sawed the new corner post off about three inches above the ground and threw it over on plaintiff's land. This permitted plaintiff's barn fence to sag and his cattle to again go into his truck patch. The next day, plaintiff put in another corner post in the same location where the one had been sawed off and again nailed on the boards to close the gap. That night the boards were knocked off by defendants and plaintiff's cattle were permitted to get into his truck patch and orchard. This process of the plaintiff nailing on the boards and the defendants knocking them off was repeated about fifty different times during the summer, permitting the plaintiff's cattle to go into the orchard and truck patch. This resulted in the destruction of plaintiff's orchard of young trees.

In June of that year, plaintiff fenced off thirty acres of timothy meadow and placed his forty head of cattle in that inclosure in order to keep them out of his truck patch, but left his milch cows in the large pasture. He further testified that the eighty-acre pasture was in good blue grass, but there was no water for stock on it; that his cattle, using that pasture, got water from a well on the southeast part of the "home forty" and, for that reason, he could not fence off the Davies County pasture so as to make it available under the circumstances for pasturage. That, by

reason of the defendants' repeated acts of destruction, he lost the use of the Davies County pasture during the months of June, July and August of that year; that the pasture was worth forty dollars per month during that time.

There was testimony tending to show that the five acres of orchard and truck patch were worth about $150 per acre before they were damaged by the cattle, and were worth about $75 per acre after the trees, etc., had been destroyed by the cattle.

Plaintiff testified that he did not go down and tell the defendants not to cut the hedge fence, because the defendants "were on the war path" and he thought he would not bother them, but would "go to law." Frequently, during the summer, he saw the two Hurd boys going along the fence carrying their guns, and one time he saw one of the boys holding a gun while the other one knocked the boards off at the corner post.

At one time, when the boys were chopping on his fence, plaintiff took a gun and went down toward the fence and raised up from behind a brush pile as the Hurd boys passed with their guns. The Hurd boys had a shot gun, a target rifle and one pistol. When they saw defendant had a gun, they ran through the brush out of his sight and he heard them fire the shot gun and rifle once and the pistol six times. Plaintiff was sixty-seven years old. The Hurd boys were "grown men." James Hurd's age is not given.

It appears that a short time after the hedge was cut, plaintiff met James Hurd at the southeast corner of his home forty where they had a dispute as to the correct boundary line. Plaintiff claimed that the line was at the place indicated by the Williams Survey, made in 1873, and defendant contending that it was as shown by the recent survey. They parted enemies, and it does not appear that they had any further conversation thereafter.

At one time when the hired hand of the plaintiff was rebuilding the corner post, James Hurd told him not to build any more fence there, because the post was out of line.

There was evidence tending to show that defendant James Hurd was present when the stakes were set for the relocation of his wire fence, but it does not appear that he was present when the plaintiff's wire fence, corner post and boards were torn down. The actual work of destruction was done by his boys. Plaintiff offered in evidence the testimony of defendant James Hurd upon a former trial, which was as follows:

"Q. Did you tell your boys to cut off that corner post? A. No, sir.

"Q. Did you know they were going to cut it?. A. No, sir.

"Q. Or that they cut it? A. I didn't know it till afterwards.

"Q. Did you approve of it afterwards? A. Well, I didn't tell them to.

"Q. You didn't object to it? A. No.

"Q. Answer whether you approved of it or not? A. Well, I didn't want anything on my land.

"Q. Well, you approved of it then? A. Yes, sir; it was on my land and I went and told that boy not to put it there."

Plaintiff introduced in evidence the judgment entered on the ejectment count on the first trial and also the writ of restitution. The judgment in ejectment found that the plaintiff was entitled to the possession of the disputed strip of ground, and further found that plaintiff was the owner of all of the land including and north of the original hedge and wire fences of the plaintiff. Plaintiff also introduced evidence tending to show that on the first trial he took a voluntary nonsuit as to counts four, five, six, seven,

eight, nine and ten, which counts sought to recover damages, beginning with the month of June, 1904. Neither of the defendants testified in the case. The only evidence offered upon the part of the defendants was the plaintiff's original petition which was in four counts; the verdict of the jury upon the ejectment count, and the verdict on two of the damage counts rendered at the first trial. Defendants also offered in evidence the first amended petition which was in eleven counts.

I. Plaintiffs in error are not now in a position to urge as error the action of the court in overruling their motion to make the petition more definite and certain. This point was waived when they **Waiver.** answered over and went to trial upon the merits. [Sauter v. Leveridge, 103 Mo. 615; State ex rel. v. Bank, 160 Mo. 640; Dakan v. Chase & Son Mercantile Co., 197 Mo. 238; Ewing v. Vernon County, 216 Mo. 681.]

In the main opinion in the case of Shohoney v. Railroad, 223 Mo. 649, l. c. 673, an attempt was made to overrule the above cases on the point in question, but since the opinion as to that point did not receive a majority vote the above cited cases are to be considered as announcing the correct rule.

II. It is next contended that the plaintiff's counsel made prejudicial remarks in his opening statement to the jury. This point is not open **Argument to Jury.** to appellate review because the plaintiffs in error failed to save an exception to the court's ruling thereon.

III. Plaintiff was permitted to prove, over the objection and exception of the defendants, the rental value of the eighty acres of blue grass pasture during

the months of June, July and August, **Speculative Damages.** 1904. It is contended that this item of damage was remote and speculative. We are unable to agree with this contention. It appears from the evidence that the defendants repeatedly destroyed a portion of the fence which served as an inclosure to keep plaintiff's cattle upon this pasture. Plaintiff rebuilt the fence many times, but each time it would be destroyed by defendants and the cattle would be permitted to escape. In order to prevent the cattle from continually escaping and destroying other parts of his premises, plaintiff confined the cattle within another inclosure and was deprived of the use of the pasture during those months. This was but a natural and direct consequence of the continued malicious acts of the defendants and was not, therefore, such damages as could properly be termed remote or speculative.

IV. It is contended that there was no evidence connecting the defendant James Hurd with the destruction of the corner post and wire **Participation in Trespass.** fence, and that, therefore, the court erred in refusing to give his instruction in the nature of a demurrer to the evidence under the second count in the petition.

The evidence shows that James Hurd was the owner of the forty acres adjoining the premises of plaintiff on the south; that he had a line surveyed between the two farms and was present personally directing his sons as to the setting of the stakes for the relocation of his fence. These stakes were located north of plaintiff's fence, on plaintiff's land. After this was done, James Hurd was personally present assisting in cutting down the hedge fence of plaintiff, which was on the same line as the wire fence and the corner post. When plaintiff's farm hand was rebuilding the destroyed corner post and wire fence,

James Hurd told him not to build the fence there because the post was out of line. His testimony introduced in evidence was as follows:

"Q. Answer whether you approved of it (the destruction of the corner post) or not? A. Well. I didn't want anything on my land. Q. Well you approved of it then? A: Yes sir; it was on my land and I went and told that boy not to put it there."

In order that James Hurd might be held legally responsible for the destructive acts of his sons, it was not necessary that he should be personally present, participating in the acts of destruction, but it was sufficient to establish his liability therefor if he aided, counselled or encouraged, by words or conduct, his sons to do the act. [Allred v. Bray, 41 Mo. 484.] And this. as any other fact, may be proven by circumstantial evidence. [Willi v. Lucas, 110 Mo. 219.]

When this testimony is considered in the light of all the circumstances shown in evidence, we think there was sufficient proof to justify the jury in inferring therefrom that the defendant James Hurd advised or encouraged his sons in the destruction of the wire fence and corner post, and that, therefore, the court acted properly in refusing the demurrer.

V. We are unable to agree with the contention that the instructions given permitted the jury to assess the same damages twice. Plaintiff's instruction

**Instructions.** number 10 clearly separated and distinguished the different elements of damage which the jury should consider under each count and the instructions were not misleading in this regard. We have carefully read all the numerous instructions given and refused and have failed to find any error therein that would work a reversal of the judgment.

VI. The most important question presented upon the appeal is with regard to the excessiveness of the

verdict. There was sufficient evidence, we think, to justify the verdict for the actual damages on each count, but it clearly appears that the amount of exemplary damages allowed, even after the *remittitur* in the trial court, was greatly in excess of what the circumstances and facts in evidence would justify or warrant.

**Excessive Verdict.**

A review of the many cases awarding exemplary damages discloses that a hard-and-fast rule for the measuring of such damages cannot be declared. Each case turns more or less upon its own peculiar facts. The character and standing of the parties, the malice with which the act was done, and the financial condition of the defendant are elements which should be taken into consideration in awarding damages of this character (Buckley v. Knapp, 48 Mo. 152; 8 R. C. L. 606-608, secs. 151, 152, and cases therein cited; 2 Sutherland on Damages (3 Ed.), p. 1092), and the amount may be such as would by way of punishment and example serve to deter the occurrence of like acts in the future.

There is very little evidence as to the financial condition of these defendants. There is no showing at all with regard to the financial condition of the two sons and the only property of defendant James Hurd which is mentioned in the evidence is the forty acres of land adjoining the premises of the plaintiff. While we do not undertake to say that a man without property should be exempt from the liability of exemplary damages, yet it may be safely said that a man with small means can be sufficiently punished and deterred from malicious action by a sum which would perhaps be wholly inadequate to punish or deter a man of large means.

We have carefully considered the attending circumstances together with all the facts and elements disclosed by the present record and we have reached the conclusion that, upon the present record, exem-

plary damages should not be permitted in excess of five hundred dollars on each count of the petition and that the judgment is therefore excessive by $6500.

The evidence in the case clearly shows that plaintiff was entitled to a substantial verdict. Four different juries have held the defendants liable for the trespass. In fact, there was very little defense made to the cause of action upon the last trial. There is no evidence of misconduct upon the part of the jury or matters of error which would arouse prejudice and passion upon the part of the jury. It appears that the excessive amount allowed by the jury was more than likely due to a misapprehension of the elements to be considered in allowing exemplary damages than to undue prejudice or passion. The above matters considered, in connection with the fact that this unfortunate controversy, which has now been pending in the courts for more than a decade, should be ended, we think it a proper case in which to exercise the rule which has become established in this State, to-wit, that of ordering an affirmance upon condition of *remittitur* of the excessive portion of the judgment, under the circumstances here present, rather than a reversal of the judgment and a remanding of the cause. [Cook v. Globe Printing Co., 227 Mo. 471, l. c. 547; Moore v. Transit Co., 226 Mo. 689; Clifton v. Railroad, 232 Mo. 708.]

It is therefore ordered that if the defendant in error will, within ten days, enter a *remittitur* of $6500 as of the date of the judgment in the trial court, the judgment will be affirmed in the sum of $1510 with interest at six per cent from the date of the judgment in the trial court; otherwise, the judgment will be reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. All of the judges concur.