DANIEL OSAGERA, Appellant, v. CHARLES E. SCHAFF, Receiver of MISSOURI, KANSAS & TEXAS RAILWAY COMPANY.

Division Two, April 7, 1922.

1. **TRIAL THEORY: Adopted on Appeal: Intrastate Commerce.** Notwithstanding plaintiff's petition alleged that defendant was engaged in interstate railway business as a common carrier and that when injured he was loading stone on one of its cars, yet if all the parties, including the trial court, treated the particular engagement of defendant at the time in question as being that of an intra-state carrier, the case will on appeal be disposed of upon said adopted trial theory.

2. **WORKMEN'S COMPENSATION LAW: Non-Compliance by Employer: Proof: Contributory Negligence.** The Workmen's Compensation Law of Oklahoma is penal in its nature and in derogation of the common law, and before a workman engaged in loading stone on to a car of an interstate railroad can escape the effects of his own contributory negligence, which the said act declares shall not be a defense, he must prove non-compliance by defendant with the provisions of said act, and therefore that said act applied

to defendant; and proof that defendant in the operation of its quarry had obtained permission from the State Industrial Commission to carry its own risk, and that there were no other records on file with the Commission as to defendant's course with respect to its employees, is not sufficient proof of non-compliance, since the act provides that one of the methods by which "an employer shall secure compensation to his employees" shall be "by obtaining and keeping in force guaranty insurance," and such showing is not proof that defendant did not obtain and keep in force guaranty insurance.

3. ———: **Right of Injured Party to Sue.** Under the Workmen's Compensation Law of Oklahoma, giving to an injured employee compensation for personal injuries, the State Industrial Commission alone can prosecute the action against the employer, and the injured employee cannot maintain the action in his own name, either in Oklahoma or Missouri, since said act provides that "the claim shall be prosecuted for the injured employee by the Commission, without expense to such employee," and the Missouri statute (Sec. 1162, R. S. 1919) says that a person to whom a cause of action has accrued under the laws of another state may maintain an action in the courts of this State "provided such person be authorized to bring such action by the laws of the state where the cause of action accrued."

4. ———: **Failure to Give Notice.** Since the Workmen's Compensation Law of Oklahoma requires that "notice of an injury, for which compensation is payable under this act, shall be given to the Commission" and that "the failure to give such notice, unless excused by the Commission, shall be a bar to any claim under this act," a failure to give notice, unless excused, is fatal to a maintenance of an action for compensation.

5. **DEMURRER: No Exception: Nonsuit: Appellate Practice.** Where the court at the conclusion of the trial gave a demurrer offered by defendant, and plaintiff saved no exception, but took an involuntary nonsuit with leave to move to set the same aside, no question involving plaintiff's right to recover under the Workmen's Compensation Law of Oklahoma for personal injuries is for consideration in the appellate court.

6. ———: ———: **Nunc Pro Tunc Correction.** Where plaintiff failed to save an exception to the giving of a demurrer to his case, proof, at a subsequent term, after the bill of exceptions was settled and filed, that a failure to note an exception was a mere oversight by the clerk who made the record entry and by the reporter who made up the bill, and that it was the practice and custom of the court to note an exception to every adverse ruling, was not suf-

Osagera v. Schaff.

ficient to authorize a *nunc pro tunc* entry to correct either the record or the bill. The object of such an entry is to make the record speak the truth, and to make it at a subsequent term some memorandum, either from the judge's minutes, the clerk's entries or some paper in the case, justifying it, must be produced.

7. **ASSIGNMENTS: Rule 15.** An assignment of error under appellant's points and authorities is a substantial compliance with Rule 15.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*Prince, Hamilton, Harris & Beery* for appellant.

The trial court, in sustaining a demurrer at the close of plaintiff's evidence and forcing plaintiff to an involuntary nonsuit, committed error for the following specific reasons: (1) Plaintiff, an employee of a railroad, was injured in the State of Oklahoma in the performance of his duties as a laborer. Oklahoma has a compensation law requiring employers to deposit certain sums of money with the Industrial Commission or take steps as are necessary to secure the payment as compensation for injured employees. This requirement was ignored by the defendant. The Oklahoma act is highly remedial. It does not in express words or by intent abolish plaintiff's right to sue in his own name, but as a gratuity to him in the extremity of litigation tenders the services of the Commission to him without expense, and enlarges, rather than restricts, his right of action for damages. The real party in interest is not the formal plaintiff, but the plaintiff for whose benefit the recovery is sought. Stewart v. B. & O. Rd. Co., 168 U. S. 445; Maryland v. Baldwin, 112 U. S. 490; Lang v. Ry. Co., 27 N. Y. Supp. 90. (2) That the intent of the Legislature was to facilitate and enlarge rather than hamper and restrict the rights of a workman injured negligently, and who has a right of

action for damages, was made apparent by an amendment of 1919, Laws of Oklahoma, 1919, p. 16. The removal by amendment of that provision in the original act which provides that the commission sue for the injured workman without expense to him, indicates that it was the intent of the framers of the original act merely to aid the workman in the recovery of damages and not hamper him by depriving him of the right to sue in his own name, or to restrict his right to sue to the courts of Oklahoma. (3) Where the intent of an amendment is apparent, such intent will be carried into the original act, and every presumption indulged to effectuate that intention, by referring the words used in the amendatory act to the original act and construing them in their proper connection throughout the act as amended. The original act and the amendment thereof shall be construed together as constituting one law. Bennett v. State ex rel. Newer, 150 Pac. 198, 47 Okla. 503; 36 Cyc. 1164; Black on Interpretation of Laws (2 Ed.) secs. 165, 166. (4) The important portion of the remedial law is that which gives a right of action, and not that part which provides who may enforce it, which is an incidental provision. Lang v. Ry. Co., 27 N. Y. Supp. 92. (5) Where the right and the remedy are clear, regard will be had to the real, rather than the nominal party, for the purposes of jurisdiction; the important matter is the award of damages. Stewart v. B. &. O. Ry., 168 U. S. 449. (6) It makes no difference whether the right of action has its origin in the common law or in legislative enactment. Any attempt to limit the jurisdiction of courts of other states in the enforcement of the right is necessarily invalid, and the construction placed upon Section 2 of the Compensation Act of Oklahoma imputes to that law the element of unconstitutionality, in that such construction operates as an impingement upon the provision of Section 2, Article 4 of the Constitution of the United States, which commands that citizens of this State shall be entitled to all the privileges and immunities of citizens of the several states. Kenney v. Supreme Lodge, 252 U. S. 414; Tenn.

Coal Co. v. George, 233 U. S. 354. (7) Section 2 of the Workmen's Compensation Law of Oklahoma of 1915 contains no provision restricting the right of workmen to sue in other jurisdictions and the construction placed upon said law by the court *nisi* which imputes to it such meaning and intent, is unconstitutional and in violation of Section 1, Article 4, of the Constitution of the United States, in that it fails to give full faith and credit to the Oklahoma statute above mentioned. Kenney v. Supreme Lodge, 252 U. S. 414; Tenn. Coal Co. v. George, 233 U. S. 354. (8) Such attempt is also invalid as an endeavor to achieve a deprivation of property without due process of law, in violation of the express provisions of Section 1 of the 14th Amendment of the Constitution of the United States. (9) A state cannot create a transitory cause of action, and at the same time destroy the right to sue on that transitory cause of action, in any court having jurisdiction, and any act on the part of a trial court which works such result is the withholding of a fixed right. Tenn. Coal Co. v. George, 233 U. S. 354.

*J. W. Jamison, Cooper, Neel & Wright* and *J. S. Bassett* for respondent.

Respondent's position in this matter is, first, under the evidence in this case respondent did secure the payment of compensation for his injured employees and that this claim comes under the schedule branch of the compensation law and should have been filed before the commission and a hearing heard on same as required by said law; second, that if it be conceded for the sake of argument that respondent did not secure compensation for his injured employee, the case, nevertheless, is under the Oklahoma Compensation Act, but under the penalty branch of same. Under the latter situation, appellant has no more right to bring suit in another state than he has under the first branch, and in either event was required to give notice as provided by said act which appellant failed to do.

REEVES, C.—Plaintiff sued for injuries received on the 19th of June, 1917, at Chokie, Oklahoma, while loading stones on one of defendant's cars from a stone quarry at that place. His right leg below the knee was run over, resulting in amputation above the ankle.

In his petition he charged sundry negligent acts on the part of the defendant, and as an aid to his suit he invoked the provisions of the Workmen's Compensation Law of the State of Oklahoma. Upon a trial in the Circuit Court of Jackson County at Independence, where his suit was filed, under the compulsion of a demurrer, at the close of his case he took an involuntary nonsuit, with leave to move to set same aside. Being unsuccessful in his motion, he has prosecuted his appeal to this court. He sued for $7500, but in his motion to set aside the involuntary nonsuit he raised constitutional questions, hence the jurisdiction of this court.

The petition charged that defendant's railroad was "engaged in interstate railway business as a common carrier in Missouri, Kansas, Texas, Oklahoma and various other states;" that while plaintiff "was in the employ of defendant as a laborer working at a stone quarry, near the town of Chokie, in the State of Oklahoma; . . . and while plaintiff was in the act of lifting a rock on to a car, owned and operated by the defendant, he was, through the carelessness and negligence of defendant, . . . run upon and so seriously and permanently injured and crippled, as to necessitate amputation of his right leg below the knee."

The negligence alleged consisted (a) in running against plaintiff without warning; (b) starting said car "at a time when plaintiff was in the act of loading a rock thereon and in a position of peril, unless said cars were held stationary;" (c) a violation of the humanitarian rule; (d) failure to furnish a system of signals to warn employees when about to start or move stationary cars.

Plaintiff then invoked the provisions of the Workmen's Compensation Law of the State of Oklahoma, to the effect that failure to comply with said law by any

employer, subject to its provisions, would result in depriving such employer of the usual defenses of contributory negligence, assumed risk, etc.

Plaintiff asserted that it was the duty of defendant to have complied with said law; that he had failed to do so, and that in consequence he could not interpose the defense of contributory negligence, assumed risk, etc.

Defendant's answer was a general denial, with a plea of contributory ngeligence and an assumption of risk.

Appellant's evidence tended to show that while engaged in lifting a stone upon one of defendant's cars there was a sudden movement of the car without warning to him, which resulted in the above described injury. Appellant offered a deposition of the Secretary of the Industrial Commission of Oklahoma, who had in charge all records pertaining to the Workmen's Compensation Law of that State. This witness testified that defendant receiver was granted permission by the State Industrial Commission, on the 25th day of August, 1916, to carry his own risk, without insurance, under certain provisions of the Compensation Law, in operating coal mines in Oklahoma. This was an exemption order obtained by said receiver. Thereupon appellant offered in evidence the Workmen's Compensation Laws of Oklahoma, which provide that compensation shall be paid by employers to employees engaged in certain hazardous employments where injuries are sustained. The schedule of employments includes "railroads not engaged in interstate commerce." Section 1 of Article 2 of said act defines the liability of employees in case of injury with respect to the schedules of compensation in all cases where there was a compliance with provisions of said act. In the event of non-compliance, the following specific liability is imposed:

"Section 2. The liability prescribed in the last preceding section shall be exclusive, except that if an employer has failed to secure the payment of compensation for his injured employees, as provided in this act, then

an action may be maintained in the courts for damages on account of such injury for the benefit of such injured employee, and in such an action the defendant may not plead or prove as a defense that the injury was caused by the negligence of a fellow-servant or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee, and this claim shall be prosecuted for the injured employee by the Commission without expense to such employee, and the amount recovered in such action shall be paid by the Commission to such injured party, provided that this section shall not be construed to relieve the employer from any other penalty provided for in this act for failure to secure the payment of compensation provided for in this act."

Appellant prosecutes his action under the provisions of the above section. Other pertinent facts will be stated in the course of the opinion.

I. While appellant's petition alleges that defendant's railroad was "engaged in interstate railway business as a common carrier" and that plaintiff when injured was loading a stone on one of its cars, Trial Theory. yet it appears that all parties, including the trial court, treated the particular engagement of defendant's company at the time in question as being that of an intra-state carrier. It was necessary to do this to bring the action within the Compensation Law, offered in evidence, as that law particularly limited its application to "railroads not engaged in interstate commerce."

We shall dispose of the case therefore upon the theory adopted by the parties and the trial court. [Palmer v. Shaw Transfer Co., 209 S. W. (Mo.) 882; Dougherty v. Gangloff, 239 Mo. 649.]

II. It is the contention of appellant that respondent receiver, being subject to the provisions of said law, failed to comply therewith and in consequence there accrued to him the right to invoke the penalty provisions of

said law, which would deprive respondent receiver of his defenses, for it is recited in said statute that "in such an action the defendant may not plead or prove as a defense that the injury was caused by the negligence of a fellow-servant or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee."

On the other hand, it is contended by respondent that appellant did not show by his proofs that he had failed to comply with said law, and he insists here that appellant's remedy was under the general provisions of said law and not under the penalty provisions thereof. In support of this contention he calls attention to the following provisions (Section 1, Article 3):

"An employer shall secure compensation to his employees in one of the following ways:

"(a) By insuring and keeping insured the payment of such compensation with any stock corporation or mutual association or by exchanging contracts of indemnity or inter-insurance, under reasonable regulations prescribed by the Commission, providing for and securing the payment of the compensation provided in this act, or other concern authorized to transact the business of workmen's compensation insurance in this State. If insurance be so effected in such a corporation or mutual association or reciprocal or inter-insurance association, the employer shall forthwith file with the Commission, in form prescribed by it, a notice specifying the name of such insurance corporation, or mutual association or reciprocal or inter-insurance association, together with a copy of the contract or policy of insurance.

"(b) By obtaining and keeping in force guaranty insurance with any company authorized to do such guaranty business in the State, or

"(c) Subject to the approval of the Commission, any employers may enter into or continue an agreement with his or their workmen to provide a scheme of compensation, benefit or insurance in lieu of the compensation and insurance provided by this act; but such scheme

shall in no instance provide less than the benefits here secured nor vary the period of compensation provided for disability or the provisions of this act, with respect to periodic payments or the percentage that such payments shall bear to weekly wages, except that the sums required may be increased; provided, further, that the approval of the State Industrial Commission shall be granted, if the scheme provides for contributions by workmen, only when it confers benefits in addition to those required by this act commensurate with such contributions.

"(d)  By furnishing satisfactory proof to the Commission of his financial ability to pay such compensation for himself, in which case the Commission may, in its discretion, require the deposit with the Commission of securities or indemnity bond in an amount and of a kind to be determined by the Commission to secure his liability to pay the compensation provided in this act."

He particularly emphasizes the privilege extended to him by paragraph "b" of the above quoted section, which enables him to secure compensation to his employees "by obtaining and keeping in force guaranty insurance with any company authorized to do such guaranty business in the State." Respondent insists that appellant's proof wholly failed to show a non-compliance with the law, and he invokes a presumption contained in Section 11 of Article 2 to the effect that: "In any proceeding, for the enforcement of a claim for compensation under this act, it shall be presumed in the absence of substantial evidence to the contrary: (1)  That the claim comes within the provisions of this act."

Whether this statutory presumption is applicable or not, we need not decide, as appellant, before he could invoke the drastic provisions of a statute, in its nature penal, and in derogation of the common law, was obliged to prove non-compliance with provisions of said law. It was not sufficient for him to show that in the operation of coal mines respondent had obtained permission to carry his own risk, and that there were no other records

on file with the Industrial Commission as to his course with respect to the employees of his railroad. Under the provisions of said law he may have obtained and kept in force guaranty insurance as required by law and in such event there would have been a compliance with the Workmen's Compensation Law. The fact that the records of the Industrial Commission were silent did not afford proof of non-compliance so as to enable appellant to invoke the penalty provisions of said law, and particularly in view of the presumption that every one does his duty. [Brigham City Fruit Growers Assn. v. Zollman Produce Co., 220 S. W. 911.]

III. Even though we may assume that the proof was sufficient to show non-compliance with the Workmen's Compensation Law and that a right had accrued to appellant under the penal provisions, yet that section specially provides that such "claim shall be prosecuted for the injured employee by the Commission without expense to such employee, and the amount recovered in such action shall be paid by the Commission to such injured party."

Right to Sue.

From this it will be noted that the right to enforce the benefits of said section and enjoy its special privileges exists in the Commission, and within the State of Oklahoma. The Commission alone is authorized to prosecute the action in behalf of the employee, wherein respondent would be denied his defenses. If appellant could not prosecute an action in his own behalf and in his own name in the State of Oklahoma, neither could he prosecute such action in Missouri. It is provided by Section 1162, Revised Statutes 1919, that:

"Whenever a cause of action has accrued under or by virtue of the laws of any other state or territory, such cause of action may be brought in any of the courts of this State, by the person or persons entitled to the proceeds of such cause of action: Provided, such person or persons shall be authorized to bring such action by the laws of the state or territory where the cause of action accrued."

If, therefore, appellant could not prosecute said action in Oklahoma in his own name, he could not acquire that right in Missouri by reason of the fact that said action, as he claims, may be a transitory action.

"It is an incontrovertible maxim of law that a statute imposing a penalty for a new created offense or for a breach of duty and defining the particular mode in which and before what tribunal the penalty shall be recoverable must be strictly pursued." [Riddick v. Governor of Missouri, 1 Mo. 147; Parish v. Railroad, 63 Mo. 284.]

When a statute creates a new right and prescribes the remedy, that remedy is preclusive and must be followed. [Stanton v. Thompson, 234 Mo. 7; Tennessee Coal Co. v. George, 233 U. S. 354, l. c. 359.]

If a statute imposes a new duty and creates a new right and at the same time provides a specific remedy to punish the neglect of the one and to secure the right of the other, that remedy is exclusive, and no other action lies for an infraction of the statute. [Pollock v. Eastern Railroad Co., 124 Mass. 158; Priest v. Capitain, 236 Mo. 446; Yates v. Jones National Bank, 206 U. S. 158; Farmers National Bank v. Dearing, 91 U. S. 29; 36 Cyc. 1175.]

All parties being subject to the laws of Oklahoma, the remedies prescribed there should have been followed. [Mitchell v. Smelting Co., 202 Mo. App. 251; Piatt & Marks v. Swift & Co., 188 Mo. App. 584, 176 S. W. 434.]

IV.  Moreover, it appeared that appellant had never notified the Commission nor the defendant of his injury. We may concede that the respondent had actual knowledge of his injury and that therefore no notice was required to be given to him, yet that did not dispense with the necessity of giving notice to the Commission as required by Section 8, Article 2, of the law invoked. That section requires that "notice of an injury, for which compensation is payable under this act, shall be given to the Commission and to the employer

Notice.

within thirty days after injury," and that "the failure to give such notice, unless excused by the Commission, either on the ground that notice for some sufficient reason could not have been given, or on the ground that the insurance carrier or employer, as the case may be, has not been prejudiced thereby, shall be a bar to any claim under this act."

It cannot be urged that this notice only applies in those cases where there is admittedly a compliance with said compensation law. The very fact that the penalty provision requires that suits for damages shall be prosecuted by the Commission implies that notice of injury shall be given to it and a proceeding under that statute is a proceeding to enforce a claim under the act. Said Section 8 declares that *"the failure to give such notice . . . shall be a bar to any claim under this act."* Other points and authorities urged by appellant have been duly considered but deemed inapplicable.

The trial court was clearly right in sustaining a demurrer to appellant's evidence.

V. We are really precluded, under our practice, from a consideration of any of the questions involved in this appeal. When respondent's demurrer was marked *given* at the trial, appellant, without saving an exception to the action of the court, took an involuntary nonsuit with leave. He, therefore, did not preserve the point for our review. [Lewis v. Mining Co., 199 Mo. 463; Scott v. Smelting Co., 187 Mo. App. 344; Arnold v. Ins. Co., 167 Mo. App. 154; St. John v. St. John Land & Timber Co., 201 S. W. 916; Majors v. Ozark Power & Water Co., 222 S. W. 501; Turnbow v. Ry. Co., 277 Mo. 644, 211 S. W. 41; Shanahan v. St. Louis, 212 S. W. 851; Sperry v. Hurd, 267 Mo. 628, 185 S. W. 170; Bright v. Sammons, 214 S. W. 425.]

*No Exception.*

VI. Appellant recognized this fatal omission and, over the strenuous objections of respondent, sought to remedy same by securing a *nunc pro tunc* entry amend-

ing the record.  His motion for such entry was taken up
and sustained on December 31, 1921,
**Nunc Pro Tunc Correction.** whereas his bill of exceptions had been
settled and filed at a term of court prev-
ious thereto.  Both the clerk's entry and the bill of ex-
ceptions were amended upon said motion by proof that
it was a mere oversight on the part of the clerk, who made
the original record entry, and on the part of the reporter
who made up the bill of exceptions, and that it was the
practice of the court and a custom to note exceptions to
every adverse ruling of the court.  This was not sufficient
to authorize the *nunc pro tunc* entry either to correct
the record or the bill of exceptions.  The object of such
an entry is to make the record speak the truth, and before
such can be made at a subsequent term there must be
some memorandum either from the judge's minutes, the
clerk's entries, or some paper in the case to justify it.
No such entries can be made from the memory of the
judge or on parol proof derived from other sources as
in this case.  [Reed v. Colp, 213 Mo. 577;  State v. Libby,
203 Mo. 596, 102 S. W. 641;  Ross v. Railroad, 141 Mo.
390, 38 S. W. 926, 42 S. W. 957;  State v. Jeffors, 64
Mo. 376;  Bank v. Allen, 68 Mo. 474;  Belkin v. Rhodes,
76 Mo. 643;  Brown v. Heier, 194 S. W. 1070; Dry Goods
Co. v. Williams, 202 S. W. 620;  23 C. J. 26.]

VII.  Appellant did not show in his brief a separate
assignment of errors as contemplated by our Rule 15,
and respondent has moved to dismiss his appeal.  Under
his points and authorities is an assignment of error.  We
deem this a substantial compliance with our rule.  [Kirk-
land v. Bixby, 282 Mo. 462, 222 S. W. 462.]

The premises considered the judgment of the lower
court should be affirmed.

It is so ordered.  *White, C.,* concurs; *Railey, C.,*
not sitting.

PER CURIAM:—The foregoing opinion by Reeves,
C., is adopted as the opinion of the court.  All of the
judges concur.