Billy J. WHEELER, et al.,
Plaintiffs-Respondents,

v.

COMMUNITY FEDERAL SAVINGS
AND LOAN ASSOC., et al.,
Defendants-Appellants.

No. 48332.

Missouri Court of Appeals,
Eastern District.

June 11, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 5, 1985.

Case Transferred to Supreme Court Sept. 10, 1985.

Case Retransferred to Court of Appeals Jan. 21, 1986.

Original Opinion Reinstated
Jan. 29, 1986.

Jerome Seigfreid, Seigfreid, Runge, Leonatti, & Pohlmeyer, Mexico, John G. Young, Jr., Ziercher, Hocker, Human, Michenfelder, & Jones, Clayton, for defendants-appellants.

Charles A. Powell, Jr., Macon, for plaintiffs-respondents.

DOWD, Presiding Judge.

Trespass Action. Defendants-appellants Community Federal Savings and Loan Association, Charles W. Noel and David T. Mayhew appeal from an adverse judgment entered on a jury verdict awarding plaintiffs-respondents, Billy J. Wheeler, his wife Mary Wheeler and her daughter, Mary Jo Ridings, $500 actual and a total of $100,000 punitive damages for an intentional unlawful entry into the plaintiffs' home. We affirm.

At the time of the incident, Community Federal held a note secured by a deed of trust on the plaintiffs' residential property. Also at that time, Community Federal employed Charles Noel as a loan officer. The jury assessed $40,000 and $60,000 punitive damages against Community Federal and Noel, respectively. Daniel Mayhew, a carpenter, actually entered the plaintiffs' home at the direction of Noel.

Mayhew intentionally entered the plaintiffs' home on January 11, 1982. On the previous day, the Wheelers and Mary Jo Ridings left their home in Macon County,

Missouri for Kansas City so Mr. Wheeler could pursue an employment prospect. Mr. Wheeler had been a bulldozer operator with a local coal mining company prior to being laid off in July 1979. During the next two and half years he and his wife worked numerous odd jobs to pay their mortgage and care for Mary Jo who had been confined to a wheelchair with totally debilitating injuries after being injured in a auto accident in 1969. As of January 11, 1982, there were only two mortgage payments in arrears, totaling approximately $727.00.

On the day of the intentional entry, Mayhew changed the locks on the Wheeler home as he was directed to do by Noel. Defendants maintain that such actions were necessary to "secure the property" from the severe sub-zero winter weather. Furthermore, they claim their actions stemmed from a belief that the Wheelers had abandoned their home. This belief purportedly resulted from assertions made by Wheelers' neighbors to Noel. At trial, however, these neighbors, Jim Foley and Roger Koll, denied making such assertions to Noel. We note that defendant, Community Federal, had not foreclosed their deed of trust as of January 11, 1982.

Prior to departing for Kansas City, the Wheelers arranged to have their home watched by their nearest neighbors, the Stroppels. They left keys to the house with both the Stroppels and Elmer Kruel, their brother-in-law.

Kruel was supposed to water the plants and fuel the furnace. On January 13, he unsuccessfully attempted to enter the Wheeler home. He subsequently called the Wheelers in Kansas City to inform them that he believed their locks had been changed. Upon hearing this, Mrs. Wheeler became very upset and nervous. Mrs. Wheeler suffered from attacks of bell's palsy, a paralysis of the facial nerve that produces distortion of one side of the face. As a result of the emotional distress, of learning of the defendant's act, her condition activated resulting in a drawing down of the affected eye and a drawing upon the mouth.

After speaking to Kruel, Mr. Wheeler contacted Jim Foley, the prosecuting attorney for Macon County, to notify him of a possible break-in. An investigation revealed that Mayhew had entered the Wheeler home at the direction of Noel on behalf of Community Federal.

On appeal, defendants raise numerous points. They contend that the trial court erred by (1) denying their motion for a directed verdict, (2) admitting evidence as to the emotional distress of Mrs. Wheeler, (3) admitting evidence of the criminal complaint against Mayhew, (4) refusing to strike the punitive damages portion of the verdict, and (5) refusing to grant a new trial for grossly excessive punitive damages, and (6) submitting instructions number 3, 4, 8, 9, 10 to the jury.

■ Defendants first contend that the court erred in denying their motion for a directed verdict because plaintiffs' petition fails to state a claim upon which relief can be granted, Rule 55.27(a)(6), in that: (a) the plaintiffs' mortgage was in default giving defendants a right of entry onto the plaintiffs' property, and (b) the provision of the mortgage granted defendants a right to enter plaintiffs' residence under the particular facts.

In support of point I(a) defendants cite *Pine Lawn Bank and Trust Co. v. M.H. & H. & Inc.*, 607 S.W.2d 696, 700 (Mo.App. 1980) which states as a general rule "a mortgagee after default by a mortgagor has the right to possession of the mortgaged premises for the purposes of applying the rent and profits to discharge of the mortgage debts." We agree with defendants that *Pine Lawn* accurately reflects the rights of a mortgagee of a loan in default. However, defendants adduced no evidence indicating their intent to collect any rents and profits from the Wheeler home to discharge the mortgage debt. Moreover, defendants assert as a defense that they acted merely to prevent an impairment of their security by securing the

Wheeler home from the severe winter weather.

■ As to point I(b), defendants' deed of trust contains certain clauses granting defendants a right of entry (after notice to plaintiffs) for "reasonable entries upon and inspection of the property" or "entry upon the property to make repairs." Defendants concede that no actual notice was given to plaintiffs prior to defendants' entry of the premises.

A reasonable entry upon and inspection of the plaintiffs' property would have revealed steam heat vapors coming from the Wheelers' furnace, negativing abandonment of the home. Also, no evidence adduced at trial indicates that the Wheeler home was in a state of disrepair. Defendants' provisions in the deed of trust do not provide them with the right to "secure the property" against inclement weather. Any impairment of their security caused by the harsh winter weather could only have been remedied by an action for waste. *Randolph v. Simpson*, 500 S.W.2d 289, 292 (Mo.App.1973). See also, 59 C.J.S. Mortgages § 334. Point denied.

■ For their second point on appeal, defendants contend that mental suffering is not a proper element of damages recoverable in a trespass action. They argue that evidence of the emotional distress of Mrs. Wheeler and resulting physical deformity unfairly prejudiced the jury. We disagree.

The extent of trespasser's liability for harm can be found in the RESTATEMENT (SECOND) OF TORTS § 162 which reads as follows:

> A trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass or to the land or to his things or to members of his household or to their things, caused by any act done, activity carried on, or condition created by the trespasser, irrespective of whether his conduct is such as would subject him to liability were he not a trespasser.

The law of this state has long been that "a trespasser is liable for such injuries as result naturally, necessarily, directly, and proximately from his wrongful act." *Bouillon v. Laclede Gaslight Co.*, 148 Mo. App. 462, 129 S.W. 401, 402 (1910); *Mollman v. Union Electric Light & Power Co.*, 206 Mo.App. 253, 227 S.W. 264, 265 (1921). In both *Bouillon* and *Mollman* this court permitted recovery for fright and mental anguish caused by a trespasser. In each case, the plaintiff was present when the trespass occurred so the directness and proximateness of the injury is easily traceable. Later, in *Mawson v. Vess Beverage Co.*, 173 S.W.2d 606, 613 (Mo.App.1943) this court had an opportunity to deal with the standard enunciated in *Bouillon* and *Mollman*. Therein we stated: "In order to state a cause of action in trespass the petition must allege that the injury complained of was direct and immediate upon the defendants' act and not merely consequential." *Mawson, supra*, at 613. Further, we distinguished between immediate and consequential injury by stating that "an injury is considered as immediate when the act complained of itself, and not merely a consequence of that act, occasions the injury." *Id.* In *Mawson*, plaintiffs' injuries resulted directly from his own voluntary independent action rendering his injury merely a consequence of the defendants' trespass. The court, therefore, reversed Mawson's damage recovery in his trespass action. In the case at bar, we have no voluntary independent act by Mrs. Wheeler causing her mental anguish. By simply learning of the vandalization of her home she became nervous and upset which triggered her bell's palsy. Thus, we believe that since plaintiffs may recover for mental anguish evidence of Mrs. Wheeler's emotional distress was properly admitted.

■ Next, defendants complain that the trial court improperly admitted evidence regarding a criminal complaint against Mayhew. Prior to trial, the trial court granted defendants' motion in limine excluding any such evidence. Before commencement of the second day of trial, the trial court rescinded its early ruling to permit such evi-

dence on the issue of malice. At no time during trial did defendants object when evidence concerning Mayhew's criminal prosecution was offered by plaintiffs. Thus, our review is constrained by the plain error rule. Rule 84.13. Regardless of the trial court's ruling on a motion in limine movant must make timely and proper objections at trial to preserve the issue for appeal. See *Robbins v. Jewish Hospital of St. Louis,* 663 S.W.2d 341, 348 (Mo. App.1984).

■ Upon a thorough review of the transcript searching for plain error, we find that defendants in their opening statement violated the court's order in limine more egregiously than plaintiffs.[1] Also, on the second day of trial, defense counsel extensively examined defendant Mayhew about matters which he sought to exclude.[2] Therefore, we are reluctant to find reversible error when defendants so willingly adduced the matter for the jury. Point denied.

■ In their next point on appeal, defendants contend that the trial court erred by not striking the punitive damage portion of the verdict. They reason that punitive damages must be assessed against defendant Mayhew before Noel and Community Federal are found liable for such damages. Essentially, defendants' claim that Noel and Community Federal, as principals, may only be derivately liable for damages of their agent, Mayhew. However, defendants should note that "in trespass, principals and agents are joint trespassers and are equally liable for the damages resulting from the trespass." *Harris v. L.P. & H. Construction Co.,* 441 S.W.2d 377, 382 (Mo.App.1969). Therefore, punitive damages need not be assessed against an agent before such damages are assessed against his principal. See, *Tietjens v. General Motors Corporation,* 418 S.W.2d 75, 88 (Mo. 1967) and cases cited therein. Point denied.

■ Lastly, defendants contend that they are entitled to a new trial because the damages awarded bear no reasonable relationship to the injury inflicted on the plaintiffs. Essentially, they assert that the jury abused its discretion by awarding grossly excessive punitive damages. We disagree.

Nearly seventy years ago, our Supreme Court in *Sperry v. Hurd,* 267 Mo. 628, 185 S.W. 170, 174 (1916), a trespass action, discussed how punitive damages are to be examined by stating:

> A review of the many cases awarding exemplary damages discloses that a hard and fast rule for the measuring of such damages cannot be declared. Each case turns more or less upon its own peculiar facts. The character and standing of the parties, the malice with which the act

---

1. This part of the defense attorney's opening statement is as follows:
   "And the Wheelers didn't come back until the 19th of January. When they got back the first stop that they made was that they stopped at the prosecutor's office to prosecute Danny Mayhew. And the Prosecutor said, 'Are you sure you want to do that. I don't think there's a case.' And they said they were sure they wanted to do it. So the papers were filed but never served because the prosecutor didn't go forward with the case."

2. This examination of defendant Mayhew by defense counsel is as follows:
   Q: After you had made this lock change, did you receive notification that Mr. and Mrs. Wheeler in fact had not abandoned this trailer?
   A: Yes, I received a call from Jim Foley, the Prosecuting Attorney.
   Q: And what did Jim Foley say to you?
   A: He told me that we had made a bad mistake, that the Wheelers had not, in fact, abandoned the place, that they were gone to Kansas City to visit.
   Q: What did you do?
   A: I asked him, you know, what about it, and he said that the Wheelers had wanted to file breaking and entering charges against me, which upset me. I says, "Well, what can we do about that," and he told me that he told them that he didn't feel that they had a case of breaking and entering, that the most that he would file against me was second degree trespassing.
   Q: Did you ask him what you should do about that?
   A: Yes, I did. I asked him, I said, "Is there anything we can do to avoid even that?" and he said well, he suggested that I go up to the Wheelers and apologize and try to make amends with them.

was done, and the financial condition of the defendant are elements which should be taken into consideration in awarding damages of this character [citation omitted], and the amount may be such as would serve to deter the occurrence of like acts in the future.

Defendants argue that since the jury award only $500.00 actual damages, the award of $100,000.00 punitive damages bears no rational relationship to the injury inflicted. The general doctrine is that the punitive damages awarded must bear some relation to the injury inflicted and the cause thereof, *though they need not bear any relation to the damages allowed by way of compensation* (emphasis added). *State ex rel. St. Joseph Belt Ry Co. v. Shain, et al.*, 341 Mo. 733, 108 S.W.2d 351, 356 (1937). Thus, it does not follow that simply because only $500.00 actual damages were awarded to plaintiffs, $100,-000.00 punitive damages are grossly excessive representing an abuse of jury discretion.

Our research reveals only four Missouri cases where the issue of excessive punitive damages has arisen in a trespass action. In three of the cases, the courts did alter the punitive award to coincide with the egregiousness of the trespass. *See Sperry v. Hurd, supra,* at 174; *Favorite v. Cottrill,* 62 Mo.App. 119, 120 (1895); *Beetschen v. Shell Pipe Line Corp.,* 248 S.W.2d 66, 75 (Mo.App.1952) transferred to the Missouri Supreme Court, 363 Mo. 751, 253 S.W.2d 785 (1952).[3] One critical distinction between all these cases and the case at bar is the *locus in quo.* In all the cited cases, the defendants trespassed the plaintiffs' land, not their home. We believe that invading the privacy of a possessor in land by breaking the threshold of his home is far more egregious than simply breaking the close of his real property.

The awards in *Sperry* and *Favorite* were quite substantial for their day, even though the courts reduced the original jury awards. In *Sperry* a jury in 1916 awarded

plaintiffs $510.00 actual damages and $15,-000.00 punitive damages. A remittitur by the trial court reduced the punitive damage award to $7,500.00, and this was adjusted further to $1,000.00 by the Missouri Supreme Court. Plaintiff received this award for two counts of trespass resulting from defendants intentional destruction of a fence in a dispute over a boundary line. Also, in *Favorite* an 1895 jury awarded plaintiff $1 actual damages and $5,000.00 punitive damages for defendants intentional destruction of plaintiff's billboards to drive plaintiff out of business. The trial court remitted $2,500.00 and plaintiff voluntarily relinquished $1 to defendant making a total award of $2,499.00 to plaintiff. This court affirmed that award.

When considering the nature of the trespass in *Sperry* and *Favorite* and the "time-value" of money, $100,000.00 punitive damages awarded in 1983 for the intentional unlawful entry into the Wheeler home loses any appearance of excessiveness. Moreover, the evidence indicates Community Federal's net worth to be approximately $66,679,000.00 as of the time of trial while Noel's net worth (excluding property held in the entirety) to be $90,000.00. Thus, viewing the award of punitive damages in light of the net worth of the defendants and the nature of the trespass, we believe that $100,000.00 punitive damages bears a rationale relationship to the injury inflicted upon the plaintiffs.

Defendants assert five points on appeal concerning alleged instructional errors. We have reviewed all five points and have determined that no errors of law exist. Hence, an extended discussion of these points would serve no precedential value, and these points are denied in compliance with Rule 84.16(b).

The judgment is affirmed.

SNYDER and CRANDALL, JJ., concur.

---

3. For the fourth case reviewing excessiveness of exemplary damages in a trespass action, see *Hyre v. Becker,* 18 S.W.2d 137, 140 (Mo.App. 1929).